UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JACK LEE WHITE,

    Plaintiff,

v.                                        Case No.:  8:23-cv-34-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## OPINION AND ORDER

Plaintiff Jack Lee White seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for supplemental security income benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. As explained below, the decision of the Commissioner is **AFFIRMED** under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

        **A.    Social Security Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v.*

*Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment, then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform his past relevant work, the ALJ must determine at step five whether the claimant's RFC permits him to perform other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove he is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

### C. Procedural History

Plaintiff applied for supplemental security income benefits on July 27, 2020, alleging disability beginning January 1, 2004. (Tr. 98, 240-246). Plaintiff later amended the onset date to July 27, 2020, the application filing date. (Tr. 11, 46). The

application was denied initially and on reconsideration. (Tr. 98, 123). Plaintiff requested a hearing and on April 13, 2022, a hearing was held before Administrative Law Judge Anne Sprague ("ALJ"). (Tr. 41-72). On May 26, 2022, the ALJ entered a decision finding Plaintiff not under a disability since July 27, 2020, the date the application was filed. (Tr. 10-24).

Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on December 14, 2022. (Tr. 1-5). Plaintiff filed a Complaint (Doc. 1) on January 6, 2023, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 13).

### D.    Summary of ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 27, 2020, the application date. (Tr. 14). At step two, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease of the cervical spine; obesity; major depressive disorder; post[-]traumatic stress disorder (PTSD); and anxiety disorder." (Tr. 14). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). (Tr. 15).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 416.967(b) except the claimant can lift and carry no more than 20 pounds occasionally and 10 pounds frequently; can stand and walk at least 6 hours and sit for at least 6 hours in an 8 hour workday; can occasionally climb stairs, ramps, ladders, scaffolds, and ropes, balance and stoop; can frequently kneel, crouch and crawl; can understand, remember and carry out simple, routine, repetitive instructions; can concentrate, persist, and maintain pace performing simple, routine, repetitive job tasks; can have occasional interaction with the public, coworkers, and supervisors; can adjust to occasional changes in work setting; and cannot perform production pace or quota driven type work, such as assembly lines.

(Tr. 17).

At step four, the ALJ found Plaintiff had no past relevant work. (Tr. 22). At step five, the ALJ found that considering Plaintiff's age (50 years old on the application date), education (at least high school), work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 22). Specifically, the vocational expert testified that a person with Plaintiff's limitations could perform such occupations as:

(1) Marker, DOT 209.587-034,[1] light, unskilled

(2) Photocopying machine operator, DOT 207.685-014, light, unskilled

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

  (3) Routing clerk, DOT 222.687-022, light, unskilled

(Tr. 23). The ALJ concluded that Plaintiff had not been under a disability since July 27, 2020, the date the application was filed. (Tr. 23).

## II. Analysis

On appeal, Plaintiff raises four issues:

(1) Whether the ALJ erred in finding Plaintiff could perform the three listed jobs;

(2) Whether the ALJ erred in failing to assess the persuasiveness of certain medical providers;

(3) Whether the ALJ erred in failing to consider that Plaintiff would miss too much work for medical appointments and therefore could not sustain competitive employment; and

(4) Whether the ALJ circumvented the Medical-Vocations Guidelines ("Grid Rules") given that Plaintiff's upper and lower extremity impairments should have been determined to be severe and limited him to sedentary work.

(Doc. 24, p. 1-2).

### A. RFC Assessment Relating to Jobs

In the RFC assessment, the ALJ found Plaintiff able to concentrate, persist, and maintain pace performing simple, routine, repetitive job tasks, but unable to perform production paced or quota driven type work, such as assembly work. (Tr. 17). Plaintiff contends that remand is required because the ALJ improperly identified jobs that include production pace or quota-driven work, require lifting more than 20

pounds, or require standing more than 6 hours in an 8-hour day, in excess of the RFC assessment. (Doc. 24, p. 22). The Court disagrees.

Plaintiff argues that according to the DOT, all three of the jobs cited – marker, photocopying machine operator, and routing clerk – carry a temperament "R", which means performing repetitive work, or performing the same work continuously, according to set procedures, sequence, or pace. (Doc. 24, p. 19). Plaintiff also claims that according to the Occupational Requirements Survey ("ORS"), markers and routing clerks are required to carry more weight than permitted by the RFC, and the marker position requires standing more than six hours. (Doc. 24, p. 20). To support these statement, Plaintiff relies on the ORS, which is prepared by the U.S. Bureau of Labor Statistics.[2] (Doc. 24, p. 19-20). In further support, Plaintiff attached a Detailed Job Specialty Report from Job Browser Pro by SkillTRAN, not a DOT job description. (*See* Doc. 24, Exh. A, B, C). As the Commissioner points out, the DOT does not contain requirements for temperament for the marker or routing clerk jobs, nor does the DOT require carrying more weigh or standing that exceeds the RFC assessment. (*See* Doc. 29, p. 6; DOT No. 209.587-034, 1991 WL 671802 (marker); DOT No. 222.687-022, 1991 WL 672133 (routing clerk)).

---

[2] The Bureau of Labor Statistics prepared the ORS and "provides job-related information regarding physical demands; environmental conditions; education, training, and experience; as well as cognitive and mental requirements for jobs in the U.S. economy." *See* U.S. Bureau of Labor Statistics, Occupational Requirements Survey, at https://www.bls.gov/ors/.

Plaintiff also does not allege and has failed to show that he presented this argument to either the ALJ or the Appeals Council and it is therefore not part of the administrative record before the Court. *See McWilliams v. Comm'r of Soc. Sec.,* No. 8:22-CV-1047-VMC-JSS, 2023 WL 3571020, at *9 (M.D. Fla. May 4, 2023), *report and recommendation adopted sub nom. McWilliams v. Comm'r, Soc. Sec. Admin.,* No. 8:22-CV-1047-VMC-JSS, 2023 WL 3568615 (M.D. Fla. May 19, 2023) (citing *Koehler v. Kijakazi*, No. 2:22-cv-210-JES-KCD, 2023 WL 1098234, at *6 (M.D. Fla. Jan. 30, 2023) ("The ORS data cannot serve as a basis for error because plaintiff did not confront the VE with this ORS data during the hearing, or otherwise present it to the ALJ, or present it to the Appeals Council."). The cases cited by Plaintiff are distinguishable because in those cases the ORS data had been properly raised to either the ALJ or the Appeals Council. (Doc. 20, p. 21); *see Roth v. Comm'r of Soc. Sec.*, No. 6:20-cv-550-MRM, 2021 WL 4399125, at *8 (M.D. Fla. Sept. 27, 2021); *Hernandez v. Saul*, No. CV 19-1299-AS, 2020 WL 1156402, at *5 (C.D. Cal. Mar. 10, 2020). Thus, remand is unnecessary as the Court cannot find a basis for error.[3]

---

[3] The Commissioner contends that Plaintiff presented some ORS data to the Appeals Council, but it was not the same ORS data attached to or argued in Plaintiff's brief. (Doc. 29, p. 9, n.6 (citing *compare* 372-81 with Doc. 24-4; and Tr. 382-93 with Doc. 24-5)). The Court agrees. As a result, since Plaintiff did not submit the same data during the administrative process, the Commissioner had no chance to consider it. Even if it were submitted to the Appeals Council, Plaintiff argues the ALJ, not the Appeals Council erred. Based on this challenge to the ALJ's decision, the Court need not consider evidence submitted to the Appeals Council. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1266 (11th Cir. 2007).

### B. Opinions of Kenneth Viser, PH.D., Alan Vieira, LCSW, Karen Campbell, ARNP

Plaintiff argues that the ALJ erred in not determining the persuasiveness of the opinions of Dr. Viser, LCSW Vieira, and ARNP Campbell. A bit of background is helpful. Plaintiff's amended alleged onset date of disability was July 27, 2020, the application date. (Tr. 11). The ALJ noted at the start of the hearing that Plaintiff had a previous unfavorable decision dated February 27, 2019, which was upheld by the Appeals Council, and thereby became administratively final through the date of the decision. (Tr. 11). The ALJ noted in the decision:

> At the hearing and upon the advice and counsel of his attorney, the claimant amended the alleged onset date of disability to July 27, 2020. Any discussion herein of evidence falling within a previously adjudicated period is to provide a historical context and should not be construed as intent to reopen and revise any previous, administratively final determination or decision.

(Tr. 11).

The relevant period for SSI applications is the application date through the date of the ALJ's decision, or July 27, 2020 through May 26, 2022. (Tr. 11, 24); *See* 20 C.F.R. § 416.330; SSR 83-20, 1983 WL 31249, at *7. Plaintiff argues that the ALJ should have determined the persuasive of these three medical providers' opinions, but they all treated Plaintiff and rendered any opinions from 2016 through 2018, before the relevant period. In addition, all these medical records and opinions were contained in Plaintiff's prior claim file. The ALJ noted that Plaintiff submitted

these records and accepted them for historical context only. (Tr. 11). "Courts in the Eleventh Circuit, however, tend to hold that pre-onset medical evidence is of limited relevance." *Naberhaus v. Kijakazi*, No. 8:20-cv-2190-SPF, 2022 WL 897540, at *11 (M.D. Fla. Mar. 28, 2022) (collecting cases). Plaintiff has not shown that these records from 2016 to 2018 that were adjudicated in a prior application are relevant to this application. Thus, the ALJ was not required to determine the persuasiveness of these opinions.

      C.     **Excessive Absences from Work**

Plaintiff contends that he would miss too much work for medical appointments to maintain competitive, full-time employment. (Doc. 24, p. 24). Plaintiff calculated that from the alleged onset date through the date of the decision, around 22 months, he missed 46 days, or a bit over 2 days per month. (Doc. 24, p. 24). Plaintiff further contends that the vocational expert testified that no jobs would be available for someone who was absent from work two days per month. (Doc. 24, p. 24).

When determining an RFC, an ALJ must consider all relevant evidence of record, including the effects of treatment, such as the frequency of treatment, duration, and disruption to routine. SSR 96-8P, 1996 WL 374184, *5 (July 2, 1996). Still, "whether the number of medical appointments affects [a plaintiff's] ability to work is not an appropriate consideration for assessing [his] residual functional

capacity because that determination considers only the functional limitations and restrictions resulting from medically determinable impairments." *Cherkaoui v. Comm'r of Soc. Sec.*, 678 F. App'x 902, 904 (11th Cir. 2017) (citing SSR 96-8p). Thus, the number of medical appointments a plaintiff attends is not a functional limitation caused by his impairments that would affect his physical or mental capabilities. *Id.* The Eleventh Circuit went further, "[m]oreover, nothing in the record indicates that [the plaintiff] was required, or would be required, to schedule [his] medical appointments during working hours so that they would interfere with [his] ability to obtain work." *Id.*[4]

Here, the ALJ thoroughly summarized Plaintiff's medical evidence, including Plaintiff's visits to his doctors and his hospitalization for COVID, which also occurred during the relevant period. (Tr. 19-21). Thus, the ALJ considered both the frequency and the duration of Plaintiff's care in assessing his ability to obtain and maintain employment. Plus, Plaintiff has not shown that he could not arrange his medical appointments for times that did not conflict with a work schedule. Finally,

---

[4] Plaintiff appears to confound the basis for the absences. Plaintiff cites *Samuels v. Acting Comm'r of Soc. Sec.*, 959 F.3d 1042, 1046 (11th Cir. 2020) in support of the proposition that the ALJ must consider absences because of medical appointments in the RFC. (Doc. 24, p. 25). In *Samuels*, however, the Eleventh Circuit found that when posing a hypothetical to a vocational expert, the ALJ must describe all the mental restrictions found in the decision, including the episodic nature of the plaintiff's bipolar disorder. *Samuels*, 959 F.3d at 1047. The Court further found the ALJ did not account for unexcused absences or time spent off-task caused by the plaintiff's bipolar disorder, not absences because of medical appointments. *Id.* Thus, *Samuels* is easily distinguishable from the case here.

if Plaintiff is arguing that the ALJ should have considered Plaintiff's doctor's visits and hospitalization in assessing the RFC, "that inquiry is beyond the scope of our review since it would require reweighing the evidence of [the plaintiff's] capabilities for employment." *Cherkaoui*, 678 F. App'x at 904. Substantial evidence supports the ALJ's RFC assessment.

### D.   Medical-Vocational Guidelines (the "Grids")

Plaintiff argues that the ALJ should have found Plaintiff had severe upper and lower extremity impairments, which would then limit him to sedentary work. (Doc. 24, p. 26). If limited to sedentary work, then the Grid Rule 201.12 would require a finding of disabled. (Doc. 24, p. 28). Plaintiff claims that the ALJ erred in circumventing the Grid Rules. (Doc. 24, p. 29).

To begin, Plaintiff first argues that the ALJ erred in failing to find Plaintiff's upper and lower extremity impairments severe. (Doc. 24, p. 26-27). At step two, an ALJ considers the severity of a claimant's impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is not severe "if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities" 20 C.F.R. §§ 404.1522(a), 416.922(a). In other words, a severe impairment is an impairment or combination thereof that *significantly* limits a claimant's abilities to perform basic work activities. *See* SSR

85-28, 1985 WL 56856, *4 n.1; 20 C.F.R. §§ 404.1520(c), 404.1522(a), 416.920(c), 416.922(a).

The severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). The impairment must also last or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1509, 416.920(a)(4)(ii), 416.909. The claimant bears the burden at step two of proving that she has a severe impairment or combination of impairments. *O'Bier v. Comm'r of Soc. Sec. Admin.*, 338 F. App'x 796, 798 (11th Cir. 2009).

This inquiry "acts as a filter in that the finding of any severe impairment ... is enough to satisfy the requirement of step two and allow the ALJ to proceed to step three." *Ball v. Comm'r of Soc. Sec. Admin.*, 714 F. App'x 991, 993 (11th Cir. 2018) (internal quotations omitted). "Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). "[B]eyond the second step, the ALJ must consider the entirety of the claimant's limitations, regardless of

whether they are individually disabling." *Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 841-842 (11th Cir. 2014) (internal citations omitted).

With this standard in mind, even if the ALJ should have characterized Plaintiff's upper and lower extremity impairments as severe, any error is harmless because the ALJ characterized other impairments – degenerative disc disease, disease of the cervical spine, obesity, major depressive disorder, post-traumatic stress disorder, and anxiety disorder – as severe. (Tr. 14). The ALJ then advanced to step three of the sequential evaluation. *See Ball*, 714 F. App'x at 993. With step two satisfied, the issue then becomes whether the ALJ considered all of Plaintiff's impairments in assessing the RFC.

### 1. Lower Extremity Impairments

Plaintiff claims that his ability to stand and walk was severely restricted by his plantar fascial fibromatosis involving his calves and feet, bilateral knee arthralgia, cramps in his calves and feet, left knee arthritis, and cellulitis of the right toe. (Doc. 24, p. 26). Beginning with the plantar fascial fibromatosis, Plaintiff cites medical record claiming to show he is severely restricted based on this impairment, however, the records do not support any standing or walking limitations. (Doc. 24, p. 26 (citing Tr. 466, 477, 504, 505, 572)). In addition, all these records were from 2016 to 2017, before the alleged amended onset date. (Tr. 466, 477, 504, 505, 572).

Next, Plaintiff claims limitations for bilateral knee arthralgia and cramps in the calves and feet. (Doc. 24, p. 26 (citing Tr. 601, 603)). In these record, Ghiath Kashlan, M.D. found Plaintiff ambulatory without assistive device on arrival, normal gait, no unsteadiness, no stiffness, effusion, or swelling in any joint, and some tenderness over knees and elbows. (Tr. 601-602). Dr. Kashlan also found Plaintiff could stand on one leg with no difficulty and had full muscle strength. (Tr. 602-603). Dr. Kashlan reported Plaintiff's subjective complaints, but his exam findings did not support any limitations. (Tr. 603).

Plaintiff next claims limitations based on arthritis of the knee. (Doc. 24, p. 26 (citing Tr. 659, 662, 683, 1058, 1078)). Plaintiff complained of knee pain, but also found improvement with medication. (Tr. 659, 662, 683, 1058, 1078). The ALJ noted that Plaintiff complained of arthritis of the left knee, but found this impairment as well as others non-severe for, among other reasons, it responded to treatment, or caused no more than minimal vocationally relevant limitations. (Tr. 14). The ALJ also noted many treatment records showing Plaintiff had normal gait. (Tr. 19-20). And again Plaintiff cited records showing Plaintiff was ambulating normally, with normal tone, normal motor strength, normal movement, and normal gait and station. (Tr. 659, 662, 683, 1058, 1078).

Lastly, Plaintiff claims limitations based on cellulitis of the right toe. (Doc. 24, p. 26 (citing Tr. 803)). On January 28, 2019, Plaintiff was diagnosed with

cellulitis of the right toe. (Tr. 803). But other than that record, Plaintiff cites no other medical records to support any limitation from this diagnosis. Diagnoses alone are insufficient and instead a plaintiff must show the effect of the impairment on his ability to work. *See Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir.1986)). Plaintiff did not show that any of these alleged lower extremity impairments caused a limitation on his ability to work that was not covered in the RFC assessment.

### 2. Upper Extremity Impairments

Plaintiff argues that he had upper extremity impairments, such as trembling or shaking hands, pain or numbness in the right arm and fingers, and elbow arthralgia. (Doc. 24, p. 27 (citing Tr. 561, 567, 581, 583, 589, 601, 603, 616, 683)). For the shaking or trembling hands, Plaintiff cites records from: LCSW Vieira during a 2016 psychological exam (Tr. 561); Dr. Visser during a 2016 psychological evaluation (Tr. 567); complaints of numbness on the right with no associated treatment (Tr. 581); complaints of pain and numbness in the right arm, but no muscular arthralgias, no weakness, full range of motion (Tr. 583-84); complaints of right arm, index and middle finger numbness with no associated treatment (Tr. 589; 616); complaints of right arm pain and numbness, but on exam the medical provider found full muscle and grip strength, normal finger manipulation, and normal rapid succession of motions of thumb to finger (Tr. 602-603); and a 2016 medical record

which showed improvement of aches and pains in fingers and elbows with medication (Tr. 683). In sum, most of these records detail Plaintiff's subjective complaints without any abnormal physical examination findings to support these complaints. And some records were dated years before the alleged onset date. The ALJ also noted Plaintiff's subjective hand complaints, but found that hand x-rays were reported as normal with no fractures, dislocation, bony destruction, arthritic changes, or soft tissue abnormalities, and intact carpal rows. (Tr. 19). He also noted that Dr. Kashan found normal fine finger manipulation. (Tr. 19). Similar to the alleged lower extremity limitations, Plaintiff has not shown that any of these alleged upper extremity impairments caused a limitation on his ability to work that was not covered in the RFC assessment.

Substantial evidence supports the ALJ's RFC assessment. Thus, Plaintiff's allegations that he has upper and lower extremity limitations that would limit him to sedentary work fails as does his argument that the ALJ circumvented the Medical Vocational Guidelines.

### III.     Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The

Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on March 11, 2024.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties